UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH ROBERT PETERSMARK,

               Plaintiff,

v.

MICHAEL BURGESS et al.,

               Defendants.

_____/

Case No. 1:24-cv-604

Honorable Ray Kent

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 11.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burgess, Clouse, Erway, Baker, Bassett, and all Defendants in their official capacities. The Court will also dismiss, for failure to state a claim, the following individual capacity claims against remaining Defendants Pelky, Doe, and Cochrane: Plaintiff's First Amendment claims alleging a violation of Plaintiff's right to petition the government, interference with Plaintiff's access to the Courts, violation of his right to free exercise of his religion, and retaliation related to Plaintiff's complaints of copyright infringement, Fifth Amendment claims, Sixth Amendment claims, Eighth Amendment claims other than Plaintiff's claim against Defendant Cochrane for attempting to pay another prisoner to assault Plaintiff, Fourteenth Amendment claims, claims for violation of the Michigan Health Code, and copyright claims. Plaintiff's First Amendment

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

retaliation claims against Defendants Pelky, Doe, and Cochrane, individually, other than those related to alleged copyright infringement, and Eighth Amendment claim against Defendant Cochrane, individually, alleging that Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff will remain in the case.

The Court will also deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26) and Plaintiff's "motion for immediate restraining order from retaliation" (ECF No. 6).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff in their individual and official capacities: Warden Michael Burgess, Deputy Warden J. Clouse, Assistant Deputy Warden Jason Erway, Resident Unit Manager Keith Pelky, First Shift Lieutenant Unknown Baker, Officer John Cochrane, Inspector Unknown "John Doe," and Grievance Coordinator T. Bassett.

On January 15, 2014, Plaintiff sent kites to Defendants Pelky and Erway, requesting transfer to a new facility because the program that Plaintiff required for release ("core program") was not offered at ECF. (ECF No. 1, PageID.8.) Plaintiff received no response and, on February 20, 2024, filed a grievance. (*Id.*) Non-parties Ensing and Kenison responded that Plaintiff must reduce his custody level before he can be placed in the program. (*Id.*) Plaintiff was unable to file a timely appeal because Defendant Pelky determined that the appeal was not legal mail. (*Id.*) When Plaintiff did appeal, Defendant Burgess responded that the appeal was not timely. (*Id.*)

On January 22, 2024, non-party Librarian Valone removed Plaintiff from the legal writer program. (*Id.*) The following day, Plaintiff filed a grievance regarding his removal. (*Id.*)

4

Defendants Bassett and Erway responded and returned Plaintiff's grievance on February 8, 2024. (*Id.*) Plaintiff claims that he missed his "court habeas deadline" because he lacked legal writer assistance. (*Id.*) On February 28, 2024, Defendant Burgess responded to Plaintiff's appeal of his grievance and explained that Plaintiff could not file his Step III appeal because Defendant Pelky determined that Plaintiff did not have sufficient funds in his account and the appeal was not legal mail. (*Id.*) Plaintiff was unable to file his Step III appeal. (*Id.*)

Plaintiff spoke with Defendant Pelky on February 23, 2024, about being transferred to a facility that offered Plaintiff's core program. (*Id.*, PageID.9.) On February 26, 2024, Plaintiff filed a grievance regarding this issue. (*Id.*) Defendants Erway and Bassett responded that Plaintiff's grievance was duplicative. (*Id.*)

Also on February 23, 2024, Plaintiff sent Defendant Pelky a kite quoting Bible verses and stating that he would file legal action against Defendant Pelky. (*Id.*) On February 27, 2024, Defendant Pelky wrote Plaintiff two misconducts for unauthorized communication and insolence. (*Id.*) Plaintiff filed a grievance, alleging that the misconducts were retaliatory, which was denied by Defendant Bassett and signed by Defendant Erway. (*Id.*) Plaintiff's appeal was also denied by Defendant Burgess. (*Id.*)

On February 24, 2024, and February 25, 2024, Plaintiff sent additional kites to "RUM and P.C.," quoting Bible verses. (*Id.*, PageID.10.) On February 27, 2024, Defendant Pelky wrote Plaintiff two additional misconducts. (*Id.*) Plaintiff filed a grievance, alleging retaliation and violation of his right to free exercise. (*Id.*) Defendants Bassett and Erway denied Plaintiff's grievance. (*Id.*) Defendant Burgess upheld the denial on appeal. (*Id.*)

On February 26, 2024, Plaintiff told Defendant Pelky that Defendant Pelky was infringing on Plaintiff's "copyrighted name by writing misconducts and reproducing Petersmark© is in

violation of Title 17 U.S.C. §§ 106–127." (*Id.*, PageID.11.) Plaintiff filed a grievance, which was denied by Defendants Bassett and Erway. (*Id.*) Defendant Burgess upheld the denial on appeal. (*Id.*) Plaintiff sent further kites, grievances, and appeals related to this issue, which were all denied. (*Id.*, PageID12.) On February 28, 2024, Defendant Pelky wrote Plaintiff a Class II misconduct ticket in response to one of the kites that Plaintiff had submitted claiming that he would file a legal action for copyright infringement. (*Id.*, PageID.14.)

On February 28, 2024, Plaintiff spoke with Defendant Pelky regarding the calculation of Plaintiff's "points" relating to Plaintiff's education. (*Id.*, PageID.10.) Defendant Pelky disagreed with Plaintiff's calculation. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*) Also on February 28, 2020, Plaintiff then sent a kite to Defendant Pelky, warning Defendant Pelky of legal action "should he not wish to humble himself." (*Id.*, PageID.19.) Defendant Pelky wrote Plaintiff two misconducts for insolence, which were upheld. (*Id.*, PageID.19–20.) Plaintiff also sent Defendant Pelky a second kite, informing Defendant Pelky that he would provide every prisoner "with level 2 points" a copy of MDOC Policy Directive 05.01.130 and help them write kites and grievances until Defendant Pelky is removed as RUM. (*Id.*, PageID.20.) Defendant Pelky wrote Plaintiff a misconduct for unauthorized communication. (*Id.*)

On March 1, 2024, Plaintiff informed Defendant Burgess that he had not been given a mop or rags for cleaning. (*Id.*, PageID.12.) Plaintiff filed a grievance, alleging inhumane living conditions. (*Id.*) Defendants Bassett and Erway denied Plaintiff's grievance, and Defendant Burgess denied Plaintiff's appeal. (*Id.*)

Also on March 1, 2024, Plaintiff spoke with Defendants Erway and Clouse regarding Plaintiff's core program. (*Id.*) Defendants Erway and Clouse told Plaintiff that, once Plaintiff was no longer on suicide watch, he could be transferred to a new facility that offers his core program.

(*Id.*) Plaintiff filed a grievance related to this issue, as well as a mental health kite because the program is a mental health treatment program. (*Id.*, PageID.12–13.) Plaintiff's grievance was denied. (*Id.*, PageID.13.)

While Plaintiff was on suicide watch on March 1, 2024, Defendant Baker removed Plaintiff's NIV Gideons International Bible. (*Id.*) When Plaintiff left suicide watch, Plaintiff's Bible was replaced by a Book of Mormon Bible. (*Id.*) Plaintiff complained to Defendant Baker, submitted kites, and filed a grievance, which was denied. (*Id.*)

On March 3, 2024, Defendant Cochrane came to Plaintiff's cell with a video camera. (*Id.*, PageID.18.) Plaintiff provided Defendant Cochrane with a notice informing Defendant Cochrane of Plaintiff's "name being copy[righted] and consequences of any further infringement." (*Id.*) Shortly thereafter, Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff. (*Id.*) Plaintiff submitted kites related to Defendant Cochrane's actions and was interviewed by Defendant Inspector John Doe. (*Id.*) Plaintiff's request for an attorney during his interview by Defendant Doe was denied. (*Id.*) Plaintiff filed a grievance, which was also denied. (*Id.*, PageID.19.)

On March 5, 2024, Defendant Pelky called Plaintiff to the hearing officer, Defendant John Doe, who reviewed Plaintiff's four misconducts and found Plaintiff guilty. (*Id.*, PageID.10.) Plaintiff filed a grievance, alleging that this action of finding Plaintiff guilty on all four misconducts was a violation of Plaintiff's right to due process. (*Id.*) Defendants Bassett and Erway denied Plaintiff's grievance. (*Id.*) On appeal, Plaintiff claimed that the hearing also violated Plaintiff's Fifth and Sixth Amendment rights. (*Id.*) Defendant Burgess denied Plaintiff's appeal. (*Id.*)

Also on March 5, 2024, Plaintiff also sent kites claiming that his cell air vent was blocked. (*Id.*, PageID.16.) Plaintiff claims that he was not receiving adequate ventilation. (*Id.*) Plaintiff did not receive a response to his kites and his grievance was denied. (*Id.*)

On March 5, 2024, and March 8, 2024, Plaintiff was sent cold food, which Plaintiff alleges violates the Michigan Health Code and puts Plaintiff at risk for illness. (*Id.*, PageID.11, 16.) Plaintiff filed a grievance, which was denied (*Id.*)

On March 6, 2024, non-party Resident Unit Manager McCall conducted a hearing on Plaintiff's four Class II misconducts for insolence. (*Id.*, PageID.14–15.) At that time, Plaintiff raised the issue of retaliation. (*Id.*) Plaintiff filed grievances related to these hearings, which were denied. (*Id.*, PageID.15.)

On March 7, 2024, Plaintiff talked to non-party Officer Jacobs on another misconduct ticket that she was reviewing. (*Id.*) Officer Jacobs told Plaintiff that "they [were] watching [Plaintiff], and instructed [Plaintiff] that [he] must give days." (*Id.*) She also told Plaintiff, "know this[,] I don't want to[.] I want to dismiss this." (*Id.*) Plaintiff believes that he was denied due process and equal protection when he was found guilty. (*Id.*) Plaintiff filed grievances related to these hearings, which were denied. (*Id.*)

On March 8, 2024, Defendant Bassett attempted to provide Plaintiff with a paper that notified Plaintiff that he had been placed on grievance restrictions. (*Id.*, PageID.17.) Plaintiff filed a grievance related to this notice, which was denied. (*Id.*)

On March 20, 2024, Plaintiff was called to the control center, where Defendant Doe asked Plaintiff about a PREA complaint that Plaintiff had written concerning a statement made by non-party RUM McCall to another prisoner. (*Id.*, PageID.21.) Defendant Doe told Plaintiff that he

believed the PREA complaint to be false and threatened to issue Plaintiff a misconduct for filing a false PREA complaint. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*)

On March 27, 2024, Plaintiff sent a kite to Defendant Clouse related to the facility not offering Plaintiff's core program. (*Id.*, PageID.22.) Plaintiff believes this to be discriminatory against a class of prisoners requiring sexual abuse programs. (*Id.*) Plaintiff filed a grievance related to this issue. (*Id.*)

On March 30, 2024, Plaintiff returned to his cell from a call-out from the law library and found that his legal work was on the floor of his cell and ripped up. (*Id.*) Plaintiff demanded to speak with shift command, but non-party Officer Bell and Defendant Cochrane told Plaintiff to enter his cell[,] or they would "beat [Plaintiff's] a** as instructed by admin for all the grievances [Plaintiff is] filing." (*Id.*) Plaintiff entered his cell but placed his foot in the door to keep it from closing. (*Id.*) When Plaintiff again asked to speak with shift command, Officer Bell told Plaintiff that they would "keep tearing up [Plaintiff's] cell" if Plaintiff continued to file grievances and would "beat [Plaintiff's] a**" if he continued after that. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*)

Also on March 30, 2024, Plaintiff and Prisoner Cooper were issued Class II misconducts for misuse of property after Prisoner Cooper logged into Plaintiff's J-Pay account. (*Id.*, PageID.19.) Plaintiff alleges that no other prisoners had been issued misconducts for the same action. (*Id.*) When Plaintiff was interviewed by Defendant Jacobs related to the misconduct, Plaintiff told her that this was a violation of his Fifth Amendment right against "double jeopardy." (*Id.*)

On April 1, 2024, Plaintiff was paged to the officer's desk, where he was questioned by Defendant Doe and Defendant Pelky. (*Id.*, PageID.22.) Plaintiff was not provided with an attorney,

not informed that he was being recorded, and was not advised of his right to remain silent. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*)

Plaintiff claims that he was unable to file Step II appeals for several of his grievances because he was transferred and the grievance coordinator at the new facility did not provide Plaintiff with stamped envelopes to send the appeals. (*Id.*, PageID.20–21.) He also generally claims that he "requested mental health treatment but [was] denied." (*Id.*, PageID.26

Plaintiff states that he intends to bring claims under the First Amendment for retaliation and violation of his right to petition the government for a redress of grievances, the Fourth Amendment for "treat on [his] life," the Eighth Amendment for unconstitutional living conditions, cruel and unusual punishment, and failure to protect, and the Fourteenth Amendment for equal protection, violation of his "right of being secured in [his] person," and "treat on [his] life." (ECF No. 1, PageID.6.) The Court will also construe Plaintiff's complaint as alleging violations of Plaintiff's Fifth and Sixth Amendment rights, Federal copyright law. and the Michigan Health Code. He seeks injunctive and monetary relief. (*Id.*, PageID.26.) Plaintiff also requests the appointment of counsel (*Id.*)

## II.    Request for Counsel

Plaintiff requests that the Court appoint an attorney to assist Plaintiff with his claims and trial. (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's requests for appointment of counsel, (ECF No. 1, PageID.26), will, therefore, be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

A.      **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff indicates that he intends to bring claims for violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

1.      **Official Capacity Claims**

Plaintiff brings claims against Defendants in both their individual and official capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as injunctive relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

However, an official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's complaint does not allege an ongoing violation of federal law or seek relief properly characterized as prospective. Plaintiff has been transferred from ECF to a new correctional facility. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying the rule is the

premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Accordingly, Plaintiff cannot maintain any official capacity claims for injunctive or declaratory relief against Defendants and his official capacity claims will be dismissed in their entirety.

### 2.    Claims of Supervisory Liability

Plaintiff alleges that Defendant Burgess is responsible for overseeing the inmates and staff of ECF and ensuring their welfare. (ECF No. 1, PageID.7.) To the extent that that Plaintiff seeks to bring claims of supervisory liability against Defendant Burgess, his claims are also subject to dismissal.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendant Burgess encouraged or condoned misconduct by any subordinate, or authorized, approved, or knowingly acquiesced in any alleged misconduct that could be said to have caused a violation of Plaintiff's constitutional rights. Accordingly, any claims against Defendant Burgess premised upon his supervisory role as the ECF Warden will be dismissed.

### 3.    First Amendment Right to Petition the Government

Plaintiff claims that Defendants violated his right to petition the government through their handling of Plaintiff's grievances. (ECF No. 1, PageID.6.) However, the First Amendment "right

to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state a First Amendment claim for violation of Plaintiff's right to petition the government.

### 4.      First Amendment Access to the Courts Claim

Plaintiff alleges that he was removed from the legal writer program and, as a result, missed a deadline for his habeas corpus action. (ECF No. 1, PageID.8.) The Court will construe Plaintiff's allegations as a First Amendment claim for interference with Plaintiff's access to the courts.

While it is well established that prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), Plaintiff has not alleged that any named Defendant was involved in Plaintiff's removal from the legal writer program. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). As discussed above, each Defendant may be held liable only for his or her own misconduct, not the alleged misconduct of others. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. Because Plaintiff fails to satisfy this minimal pleading standard, the Court will dismiss Plaintiff's First Amendment claim for denial of access to the courts concerning his removal from the legal writer program.

### 5.      First Amendment Free Exercise Claims

Plaintiff alleges that he was issued misconducts after submitting three kites which quoted Bible verses. (ECF No. 1, PageID.9, 10.) He also alleges that, while on suicide watch, Defendant Baker removed Plaintiff's NIV Gideons International Bible. (*Id.*, PageID.13.) When Plaintiff left suicide watch, Plaintiff's Bible was replaced by a Book of Mormon Bible. (*Id.*) Plaintiff contends that these actions violated Plaintiff's right to free exercise of his religion.

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's First Amendment claim is entirely conclusory. Plaintiff does not allege facts that would plausibly suggest that Defendants actions deprived Plaintiff of the "reasonable opportunity" to exercise a sincerely held religious belief. Plaintiff fails to allege the nature of his religious beliefs or to specify how Defendants actions infringed on his ability to exercise those beliefs. As noted previously by the Court, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's First Amendment free exercise claims are properly dismissed.

### 6.     First Amendment Retaliation Claims

Plaintiff alleges that Defendants Pelky, Doe, and Cochrane retaliated against Plaintiff, in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state...a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). The Court will analyze Plaintiff's allegations against each named Defendant in turn.

### a.      Defendant Pelky

Plaintiff alleges that Defendant Pelky issued Plaintiff three misconduct reports after Plaintiff filed kites quoting Bible verses. (ECF No. 1, PageID.9–10.) He also claims that Defendant Pelky issued Plaintiff a misconduct report after Plaintiff filed a grievance alleging that Defendant Pelky was infringing on Plaintiff's "copyrighted name by writing misconducts and reproducing Petersmark© is in violation of Title 17 U.S.C. §§ 106–127" (*id.*, PageID.14), two misconduct reports after Plaintiff submitted kites warning Defendant Pelky of legal action "should he not wish to humble himself," and another misconduct report after Plaintiff told Defendant Pelky that he would circulate an MDOC Policy Directive and help other prisoners write kites and grievances until Defendant Pelky was removed as RUM (*id.*, PageID.19).

In *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018), the Sixth Circuit explained the parameters of the first element of a claim for First Amendment retaliation as follows:

> "[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Violett v. Reynolds*, 76 Fed.Appx. 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King*, 680 F.3d at 699, and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 Fed.Appx. 520, 525 (6th Cir. 2002).

"Depriving someone of a frivolous claim . . . deprives him of nothing at all . . ." *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996).

Taking Plaintiff's allegations as true, the Court finds that Plaintiff's grievance alleging copyright infringement was not protected conduct as it is clearly frivolous. "A person's name or likeness is not considered a 'work of authorship' within the meaning of the Copyright Act, and is therefore not subject to copyright protection." *Trapp v. Holder*, No. 2:14-CV-12235, 2014 WL

2780079, at *1 (E.D. Mich. June 19, 2014) (collecting cases); 37 C.F.R. § 202.1 (explaining that names are not subject to copyright protection). Therefore, the Court will dismiss any claim of retaliation premised upon Plaintiff's grievance concerning alleged copyright protection for his name and Defendant Pelky's response.

However, at this early stage, the Court is unable to determine whether Plaintiff's remaining grievances were also frivolous or whether they constitute protected conduct within the meaning of the First Amendment. Because Defendant Pelky's misconduct reports were issued to Plaintiff as a direct result of Plaintiff's grievances, the Court will allow Plaintiff to proceed on his remaining claims of First Amendment retaliation against Defendant Pelky.

#### b.      Defendant Doe

Plaintiff alleges that Defendant Doe believed Plaintiff's PREA complaint to be false and threatened to issue Plaintiff a misconduct for filing a false PREA complaint. (ECF No. 1, PageID.21.) Again, at this stage, the Court assumes without deciding that Plaintiff's PREA complaint constitutes protected conduct.

An adverse action for purposes of a First Amendment retaliation claim is one that is merely "*capable* of deterring a person of ordinary firmness" from exercising protected conduct. *Bell v. Johnson,* 308 F.3d 594, 606 (6th Cir.2002) (emphasis in original) (citation and internal quotation marks omitted). "Actual deterrence need not be shown." *Harbin–Bey,* 420 F.3d at 579 (emphasis in original) (citation omitted). Therefore, even the threat of an adverse action can satisfy this element. *Hill*, 630 F.3d at 472.

Taking Plaintiff's allegations as true, the Court cannot dismiss Plaintiff's retaliation claim against Defendant Doe on screening.

### c.      Defendant Cochrane

Finally, Plaintiff alleges that Defendant Cochrane offered to pay another prisoner to assault Plaintiff in response to Plaintiff's claim of copyright infringement. (ECF No. 1, PageID.18.) Plaintiff also alleges that Defendant Cochrane and non-party Officer Bell threatened to "beat [Plaintiff's] a** as instructed by admin for all the grievances [Plaintiff is] filing." (*Id.*, PageID.22.) As discussed above, Plaintiff may not maintain a claim of retaliation against Defendant Cochrane premised upon Defendant Cochrane's attempts to pay another prisoner to assault Plaintiff because Plaintiff's statements regarding copyright infringement were not protected conduct. However, in keeping with the above precedent, Plaintiff's allegation that Defendant Cochrane threatened to harm Plaintiff in response to "all the grievances [Plaintiff is] filing" sufficiently states a claim of First Amendment retaliation at this stage of the proceedings.

### 7.      Fifth Amendment Claim

Plaintiff seeks to bring a Fifth Amendment claim for violation of the Double Jeopardy Clause after being found guilty of misconduct. (ECF No. 1, PageID.19.) He also mentions that he was not advised of his right to remain silent during an internal investigation. (*Id.*, PageID.22.)

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. In order to state a double jeopardy violation, Plaintiff must allege "multiple criminal punishments" for the same offense. *Hudson v. United States*, 522 U.S. 93, 99 (1997).

Here, Plaintiff does not allege multiple punishments for the same offense, let alone multiple *criminal* punishments. Indeed, the Double Jeopardy Clause does not apply here because administrative prison disciplinary sanctions are civil in nature; they are not criminal. "The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Odom v. Smith*, No. 1:08-cv-1181, 2009 WL 125286, at *6

(W.D. Mich. Jan. 16, 2009) (finding prisoner failed to state double jeopardy claim based on prison officials' decision to confiscate his property because the taking of prisoner property is administrative in nature and the Double Jeopardy Clause does not apply to administrative proceedings).

As to Plaintiff's claim that he was not advised of his alleged right to remain silent, the Court in *Vega v. Tekoh*, 597 U.S. 134 (2022), explained:

> The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." This Clause "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant" and "also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

*Id.*, at 141.

First, Plaintiff has made no allegation of any criminal proceedings. That alone is fatal to his claim. But second, Plaintiff references not the Fifth Amendment right to remain silent, but the rule set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), which held that during a custodial interrogation police officers must inform a suspect that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." *Id.*, at 479. Plaintiff does not allege any custodial interrogation and, even if he had, the *Miranda* warnings are "'not themselves rights protected by the Constitution,'" *New York v. Quarles*, 467 U.S. 649, 654–657 (1984), and the failure to provide them does not give rise to a cause of action under § 1983. *Vega*, 597 U.S. at 150.

For each of the foregoing reasons, the Court will dismiss Plaintiff's Fifth Amendment claims.

### 8.      Sixth Amendment Claim

Plaintiff claims that Defendants Pelky and Doe violated Plaintiff's Sixth Amendment rights when they denied Plaintiff an attorney during internal investigations. (ECF No. 1, PageID.18, 22.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Therefore, by its plain language, the Sixth Amendment right to counsel applies only to criminal prosecutions. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting. . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). The Supreme Court has repeatedly stressed that the Sixth Amendment right to counsel "does not attach until a prosecution is commenced." *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991); *see also United States v. Gouveia,* 467 U.S. 180, 188 (1984) ("[T]he literal language of the Amendment . . . requires the existence of both a 'criminal prosecutio[n]' and an 'accused'"). Plaintiff has not alleged the existence of any criminal prosecution. Therefore, the Court will dismiss Plaintiff's Sixth Amendment claims.

### 9.      Eighth Amendment Unconstitutional Conditions Claim

Plaintiff alleges that, on one occasion, he was not provided with a mop and rags for cleaning (ECF No. 1, PageID.12) and, on another occasion, his air vent within his cell was blocked (*id.*, PageID.16.) Plaintiff also claims that he was given cold food on March 5, 2024, and March 8, 2024. (*Id.*, PageID.11, 16.) Plaintiff seeks to bring Eighth Amendment claims for unconstitutional conditions of confinement.

With its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that

risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Taylor v. Riojas*, 141 S. Ct. 52 (2020), the Supreme Court reiterated that "extreme" unsanitary conditions are required to satisfy the objective component of an Eighth Amendment claim. There, the Supreme Court concluded that "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house [the plaintiff] in such deplorably unsanitary conditions for such an extended period of time." *Id.* at 53. *Taylor* described "shockingly unsanitary" conditions including confinement in a cell that was "covered, nearly floor to ceiling, in 'massive amounts' of feces' all over the floor, the ceiling, the window, the walls, and even 'packed inside the water faucet.'" *Id.* at 52 (additional internal quotation and citation omitted).

On the other hand, temporary inconveniences or discomforts less extreme than in *Taylor* are insufficient to warrant constitutional concern. *See, e.g., Perkins v. Bailey*, 2021 WL 868887, at *9 (W.D. Mich. Mar. 9, 2021) (holding that allegations of dirty cell conditions over a two-week period fell "well short of meeting the objective component of the Eighth Amendment standard."); *Rogers v. Roy*, 2021 WL 1686133, at *7 (W.D. Mich. Apr. 29, 2021) (collecting cases, and holding that "[a]llegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."). Ultimately, "conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an

Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))).

Here, Plaintiff alleges that he was not given a mop or rags to clean. He does not describe the conditions of his cell, let alone alleges facts that would indicate that he was exposed to deplorable conditions for a lengthy period of time. The same goes for Plaintiff's claim that he was exposed to inadequate ventilation due to a blocked air vent. Plaintiff does not provide the Court with any facts that would indicate that this blocked air vent caused the type of extreme conditions within Plaintiff's cell necessary to state an Eighth Amendment claim.

Plaintiff claims that being provided cold food violates the Michigan Health Code (ECF No. 1, PageID.11, 16.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff has not alleged facts that would demonstrate that being provided with cold food on two occasions posed a sufficiently serious risk to Plaintiff's health or safety such that it could be said to deprive Plaintiff of the "minimal civilized measure of life's necessities." Accordingly, Plaintiff's claims fail to satisfy the objective standard for an Eighth Amendment claim and fail on that basis alone.

Additionally, with respect to each of Plaintiff's claims, Plaintiff also fails to satisfy the subjective component necessary to state an Eighth Amendment claim for unconstitutional conditions of confinement. Plaintiff alleges that he informed Defendant Burgess that he was not provided with a mop or rags and that he submitted a grievance related to his blocked air vent.

27

However, Plaintiff does not allege facts that would suggest that any named Defendant was aware of the conditions that Plaintiff describes within his complaint *and* inferred a risk of harm to Plaintiff's health or safety from those conditions where it could be said that they drew such an inference but disregarded the risk. Accordingly, for this reason as well, the Court will dismiss Plaintiff's Eighth Amendment claims for unconstitutional conditions of confinement.

### 10.    Eighth Amendment Denial of Medical Care Claim

Plaintiff mentions that he has "requested mental health treatment but [has] been denied" (ECF No. 1, PageID.26) but provides no details regarding his request(s), need for mental health treatment, or the individual(s) who allegedly denied Plaintiff mental health treatment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). However, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff fails to allege *facts* showing how any of the named Defendants were personally involved in the alleged denial of mental health treatment. Instead, Plaintiff presents conclusory allegations of alleged wrongdoing. To state a claim upon which relief may be granted, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's allegations do not satisfy this pleading standard. *See Boxill*, 935 F.3d at 518; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity

which of the named defendants were personally involved in or responsible for each alleged violation of rights). For that reason, Plaintiff claim alleging a denial of mental health treatment is subject to dismissal.

### 11.    Eighth Amendment Claims

Plaintiff alleges that he intends to bring Eighth Amendment claims against Defendants for failure to protect. (ECF No. 1, PageID.6.) The Court construes Plaintiff's claim to refer to his allegation that Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff. (*Id.*, PageID.18.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Taking Plaintiff's allegation as true, the Court will allow Plaintiff to proceed on this Eighth Amendment claim against Defendant Cochrane related to Defendant Cochrane's actions in offering another inmate money to assault Plaintiff.

To the extent that Plaintiff also seeks to bring an Eighth Amendment claim against Defendant Cochrane related to Defendant Cochrane's threat to "beat [Plaintiff's] a**" (ECF No.1,

PageID.18), he may not do so. This threat by Defendant Cochrane falls into the category of verbal harassment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."). Therefore, Plaintiff's claim against Defendant Cochrane that Defendant Cochrane threatened to "beat [Plaintiff's] a**" is subject to dismissal.

### 12.     Fourteenth Amendment Due Process Claims

Plaintiff alleges that he was unable to participate in his core program because it was not offered at ECF and Defendants were unwilling to transfer him to a facility where it was offered. (ECF No. 1, PageID.8, 9, 11, 12, 22.) Plaintiff also claims that Defendants repeatedly denied Plaintiff's grievances and appeals related to the same. (*Id.*, generally.) Finally, Plaintiff claims that he was issued several Class II misconduct reports, and believes that he was denied due process in

the handling of those reports. (*Id.*, PageID.15.) The Court will construe Plaintiff's allegations as raising claims for violation of his Fourteenth Amendment right to procedural due process.[2]

The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Plaintiff's claim fails at the first step, however, because Plaintiff's allegations do not implicate any protected liberty or property interest.

"[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . ." *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983). And federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (explaining that the Due Process Clause is not

---

[2] To the extent that Plaintiff intended to raise Fourteenth Amendment substantive due process claims, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim. Accordingly, any intended Fourteenth Amendment substantive due process claims will also be dismissed.

implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (holding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (finding that there exists no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that the participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee).

Moreover, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli*, 81 F.3d at 1430; *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Finally, as it relates to Plaintiff's Class II misconducts, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), overruled on other grounds by *Maben*, 887 F.3d 252; *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, cannot maintain any intended procedural due process claims against Defendants premised upon his Class II misconducts.

### 13.    Fourteenth Amendment Equal Protection

Plaintiff alleges that ECF offers some rehabilitative programs but does not offer rehabilitative programs related to "sexual abuse." (*Id.*, PageID.22.) Plaintiff believes this to be discriminatory against a class of prisoners requiring sexual abuse programs. (*Id.*) Plaintiff also claims that he was denied equal protection in the handling of Plaintiff's misconduct reports., including a misconduct related to the use of Plaintiff's J-Pay account. (*Id.*, PageID.15, 19.)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff

"must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To state an equal protection claim, Plaintiff must allege facts that support his allegation that others were treated differently than he was, and he must allege facts that would support the inference that those who were treated differently were similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) ("To be a similarly-situated [person], the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs ... fail to plead the existence of a similarly situated comparator ... [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated in all material respects. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's Fourteenth Amendment equal protection claim will be dismissed.

### 14.     Fourteenth Amendment Claims Related to Personal Security and Threats

Plaintiff states that he intends to bring a Fourteenth Amendment claim related to an alleged violation of Plaintiff's "right of being secured in [his] person," and for a "t[h]reat on [his] life." (ECF No. 1, PageID.6.) A liberal review of Plaintiff's complaint leads the Court to conclude that Plaintiff intends to bring such a claim related to the verbal threat by Defendant Cochrane that Defendant Cochrane would "beat [Plaintiff's] a** . . ." (*id.*, PageID.22.)

The Court construes Plaintiff's complaint to assert Fourteenth Amendment substantive due process claims. However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this context, Plaintiff claims related to his personal safety and security are governed by the Eighth Amendment. *Farmer*, 511 U.S. at 833. Therefore, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed.

### B.     Michigan Health Code Claims

Plaintiff's complaint alleges violations of the Michigan Health Code. (ECF No. 1, PageID.11, 16.) To the extent that Plaintiff seeks to bring a civil claim against Defendants for violation of the Michigan Health Code, he cannot do so. "Michigan courts have held that the Michigan Public Health Code does not create a private right of action." *Grain v. Trinity Health*, 431 F. App'x 434, 448 (6th Cir. 2011) (citing *Fisher v. W.A. Foote Mem'l Hosp.,* 261 Mich.App. 727, 683 N.W.2d 248, 249–50 (2004), *review denied,* 473 Mich. 888, 703 N.W.2d 434 (2005);

*Ravikant v. William Beaumont Hosp.,* 2003 WL 22244698, at *5 (2003)). "The Code includes a number of remedies, including actions initiated by the state and misdemeanor fines, to enforce its provisions, and, according to Michigan law, those remedies are exclusive." *Id.* (internal citations omitted). Any claim for violation of the Michigan Health Code will be dismissed.

        **C.     Copyright Claims**

Plaintiff claims that Defendant Pelky infringed on Plaintiff's "copyrighted name by writing misconducts and reproducing Petersmark© is in violation of Title 17 U.S.C. §§ 106–127." (ECF No. 12, PageID.11.) As discussed above, Plaintiff's name is not entitled to copyright protection. Accordingly, the Court will dismiss any such claim.

**IV.    Motion for Immediate Restraining Order**

On May 29, 2024, Plaintiff filed a "motion for immediate restraining order from retaliation" (ECF No. 6), seeking an order prohibiting Defendants from interfering with Plaintiff's legal work, and an order requiring Plaintiff's immediate transfer from ECF. (ECF No. 6, PageID.142.)

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that

must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Here, the Court is not at all convinced that Plaintiff has shown a likelihood of success on the merits of his retaliation claims which have been allowed to proceed at this early stage. But, even so, since the filing of his complaint, Plaintiff has been transferred to a new facility and, as discussed above, Plaintiff's transfer moots Plaintiff's claim for injunctive relief. *See Kensu*, 87 F.3d at 175. For each of these reasons, the Court will deny Plaintiff's "motion for immediate restraining order from retaliation" (ECF No. 6).

## Conclusion

The Court will grant Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) and will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26) and Plaintiff's "motion for immediate restraining order from retaliation" (ECF No. 6). Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burgess, Clouse, Erway, Baker, Bassett and all Defendants in their official capacities

37

will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Pelky, Doe, and Cochrane in their individual capacities: Plaintiff's First Amendment claims alleging a violation of Plaintiff's right to petition the government, interference with Plaintiff's access to the Courts, violation of his right to free exercise of his religion, and retaliation related to Plaintiff's complaints of copyright infringement, Fifth Amendment claims, Sixth Amendment claims, Eighth Amendment claims other than Plaintiff's claim against Defendant Cochrane for attempting to pay another prisoner to assault Plaintiff, Fourteenth Amendment claims, claims for violation of the Michigan Health Code, and claims for copyright infringement. Plaintiff's First Amendment retaliation claims against Defendants Pelky, Doe, and Cochrane, individually, other than those related to alleged copyright infringement, and Eighth Amendment claim against Defendant Cochrane, individually, alleging that Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff remain in the case.

An order consistent with this opinion will be entered.

Dated:   August 5, 2024                         /s/ Ray Kent
                                                Ray Kent
                                                United States Magistrate Judge