UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH PETERSMARK,

   Plaintiff,

v.

MICHAEL BURGESS, *et al.*,

   Defendants.

_____/

Case No. 1:24-cv-604

Hon. Ray Kent

## OPINION AND ORDER

  This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Joseph Robert Petersmark, a prisoner in the custody of the Michigan Department of Corrections (MDOC).  The alleged incidents occurred at the MDOC's Oaks Correctional Facility (ECF). Opinion (ECF No. 12, PageID.10).  Plaintiff sued the following ECF staff in their individual and official capacities: Warden Michael Burgess, Deputy Warden J. Clouse, Assistant Deputy Warden Jason Erway, Resident Unit Manager (RUM) Keith Pelky, First Shift Lieutenant Unknown Baker, Officer John Cochrane, Inspector Unknown "John Doe," and Grievance Coordinator T. Bassett. *Id*.  After initial screening, the three remaining defendants are RUM Pelky, Officer Cochrane, and the unknown party "Inspector John Doe".  *Id*. at PageID.43-44.  This matter is now before the Court on defendants' Pelky and Cochrane's motion for summary judgment on the basis of exhaustion (ECF No. 21).

## I.  Plaintiff's complaint

  Plaintiff's complaint and attachments consisted of over 130 pages (ECF No. 1).  On initial screening, the Court dismissed all of plaintiff's claims except for "Plaintiff's First

Amendment retaliation claims against Defendants Pelky, Doe, and Cochrane, individually, other than those related to alleged copyright infringement" and plaintiff's "Eighth Amendment claim against Defendant Cochrane, individually, alleging that Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff." *Id*. at PageID.44.

   The allegations related to plaintiff's remaining claims are summarized as follows. On January 15, 2014, plaintiff sent kites to RUM Pelky and former defendant Erway, requesting transfer to a new facility because the program that plaintiff required for release ("core program") was not offered at ECF.   Opinion at PageID.10. Plaintiff received no response and, on February 20, 2024, filed a grievance.  *Id*.  Plaintiff was unable to file a timely appeal because Pelky determined that the appeal was not legal mail.  *Id*.

   On January 22, 2024, plaintiff was removed from the legal writer program.  *Id*. Plaintiff filed a grievance.  *Id*.  On February 28, 2024, former defendant Burgess responded to plaintiff's appeal of his grievance and explained that plaintiff could not file his Step III appeal because RUM Pelky determined that plaintiff did not have sufficient funds in his account and the appeal was not legal mail.  *Id*. at PageID.11.  Plaintiff was unable to file his Step III appeal. *Id*.

   Plaintiff spoke with Defendant Pelky on February 23, 2024, about being transferred to a facility that offered Plaintiff's core program. (*Id.*, PageID.9.) On February 26, 2024, Plaintiff filed a grievance regarding this issue. (*Id.*) [Former] Defendants Erway and Bassett responded that Plaintiff's grievance was duplicative. (*Id.*)

   Also on February 23, 2024, Plaintiff sent Defendant Pelky a kite quoting Bible verses and stating that he would file legal action against Defendant Pelky. (*Id.*) On February 27, 2024, Defendant Pelky wrote Plaintiff two misconducts for unauthorized communication and insolence. (*Id.*) Plaintiff filed a grievance, alleging that the misconducts were retaliatory, which was denied by [former] Defendant Bassett and signed by [former] Defendant Erway. (*Id.*) Plaintiff's appeal was also denied by [former] Defendant Burgess. (*Id.*)

   On February 24, 2024, and February 25, 2024, Plaintiff sent additional kites to "RUM and P.C.," quoting Bible verses. (*Id.*, PageID.10.) On February 27, 2024,

Defendant Pelky wrote Plaintiff two additional misconducts. (*Id.*) Plaintiff filed a grievance, alleging retaliation and violation of his right to free exercise. (*Id.*) [Former] Defendants Bassett and Erway denied Plaintiff's grievance. (*Id.*) [Former] Defendant Burgess upheld the denial on appeal. (*Id.*)

On February 26, 2024, Plaintiff told Defendant Pelky that Defendant Pelky was infringing on Plaintiff's "copyrighted name by writing misconducts and reproducing Petersmark© is in violation of Title 17 U.S.C. §§ 106-127." (*Id.*, PageID.11.) Plaintiff filed a grievance, which was denied by [former] Defendants Bassett and Erway. (*Id.*) [Former] Defendant Burgess upheld the denial on appeal. (*Id.*) Plaintiff sent further kites, grievances, and appeals related to this issue, which were all denied.  (*Id.*, PageID12.) On February 28, 2024, Defendant Pelky wrote Plaintiff a Class II misconduct ticket in response to one of the kites that Plaintiff had submitted claiming that he would file a legal action for copyright infringement. (*Id.*, PageID.14.)

On February 28, 2024, Plaintiff spoke with Defendant Pelky regarding the calculation of Plaintiff's "points" relating to Plaintiff's education. (*Id.*, PageID.10.) Defendant Pelky disagreed with Plaintiff's calculation. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*) Also on February 28, 2020, Plaintiff then sent a kite to Defendant Pelky, warning Defendant Pelky of legal action "should he not wish to humble himself." (*Id.*, PageID.19.) Defendant Pelky wrote Plaintiff two misconducts for insolence, which were upheld. (*Id.*, PageID.19-20.) Plaintiff also sent Defendant Pelky a second kite, informing Defendant Pelky that he would provide every prisoner "with level 2 points" a copy of MDOC Policy Directive 05.01.130 and help them write kites and grievances until Defendant Pelky is removed as RUM. (*Id.*, PageID.20.) Defendant Pelky wrote Plaintiff a misconduct for unauthorized communication. (*Id.*) . . . .

On March 3, 2024, Defendant Cochrane came to Plaintiff's cell with a video camera. (*Id.*, PageID.18.) Plaintiff provided Defendant Cochrane with a notice informing Defendant Cochrane of Plaintiff's "name being copy[righted] and consequences of any further infringement." (*Id.*) Shortly thereafter, Defendant Cochrane offered non-party Prisoner Cooper $1,000 to assault Plaintiff. (*Id.*) Plaintiff submitted kites related to Defendant Cochrane's actions and was interviewed by Defendant Inspector John Doe. (*Id.*) Plaintiff's request for an attorney during his interview by Defendant Doe was denied. (*Id.*) Plaintiff filed a grievance, which was also denied. (*Id.*, PageID.19.)

On March 5, 2024, Defendant Pelky called Plaintiff to the hearing officer, Defendant John Doe, who reviewed Plaintiff's four misconducts and found Plaintiff guilty. (*Id.*, PageID.10.) Plaintiff filed a grievance, alleging that this action of finding Plaintiff guilty on all four misconducts was a violation of Plaintiff's right to due process. (*Id.*)  [Former] Defendants Bassett and Erway denied Plaintiff's grievance. (Id.) On appeal, Plaintiff claimed that the hearing also violated

Plaintiff's Fifth and Sixth Amendment rights. (*Id.*) [Former] Defendant Burgess denied Plaintiff's appeal. (*Id.*) . . . .

On March 20, 2024, Plaintiff was called to the control center, where Defendant Doe asked Plaintiff about a PREA complaint that Plaintiff had written concerning a statement made by nonparty RUM McCall to another prisoner. (*Id.*, PageID.21.) Defendant Doe told Plaintiff that he believed the PREA complaint to be false and threatened to issue Plaintiff a misconduct for filing a false PREA complaint. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*) . . . .

On March 30, 2024, Plaintiff returned to his cell from a call-out from the law library and found that his legal work was on the floor of his cell and ripped up. (*Id.*) Plaintiff demanded to speak with shift command, but non-party Officer Bell and Defendant Cochrane told Plaintiff to enter his cell[,] or they would "beat [Plaintiff's] a** as instructed by admin for all the grievances [Plaintiff is] filing." (*Id.*) Plaintiff entered his cell but placed his foot in the door to keep it from closing. (*Id.*) When Plaintiff again asked to speak with shift command, Officer Bell told Plaintiff that they would "keep tearing up [Plaintiff's] cell" if Plaintiff continued to file grievances and would "beat [Plaintiff's] a**" if he continued after that. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*) . . . .

On April 1, 2024, Plaintiff was paged to the officer's desk, where he was questioned by Defendant Doe and Defendant Pelky. (*Id.*, PageID.22.) Plaintiff was not provided with an attorney, not informed that he was being recorded, and was not advised of his right to remain silent. (*Id.*) Plaintiff filed a grievance, which was denied. (*Id.*)

Plaintiff claims that he was unable to file Step II appeals for several of his grievances because he was transferred and the grievance coordinator at the new facility did not provide Plaintiff with stamped envelopes to send the appeals. (*Id.*, PageID.20-21.) He also generally claims that he "requested mental health treatment but [was] denied." (*Id.*, PageID.26[)].

*Id.* at PageID.11-16.

## II.    Motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

4

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## B. Lack of Exhaustion

### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

## 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.  *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ W.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ W, Y, and CC.  The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original).  Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ JJ.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ NN.

        **C.**    **Discussion**

        The First Amendment claims against defendant Pelky appears to allege that Pelky would not respond to plaintiff's transfer, that Pelky would not process plaintiff's grievance appeals because they were not "legal mail", and that Pelky wrote plaintiff misconduct tickets.  The First amendment claims against defendant Cochrane appear to involve a threat to beat up plaintiff and the attempt to recruit a prisoner to assault plaintiff.  The Eight Amendment claim appears to allege that defendant Cochrane offered another prisoner $1,000.00 to assault plaintiff.  There is no evidence that plaintiff filed any grievances through Step III which involve his claims in this lawsuit.  *See* MDOC Prisoner Step III Grievance Report (ECF No. 22-3).  Plaintiff admits this in his one-page response, stating "MR. [sic] Ho is correct that Petersmark© [sic] never exhausted all of his Administrative Remedies."  Plaintiff's Response ("Rebuttal to claims of Exhaustions of Administrative remedies") (ECF No. 26, PageID.103).  Rather, plaintiff contends that the administrative grievance process was unavailable because RUM Pelky interfered with his ability to exhaust grievances.

        "An inmate need exhaust only such administrative remedies as are 'available'." *Ross v. Blake*, 578 U.S. 632, 648 (2016). "[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . , such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id*. at 644.  Here, plaintiff appears to contend that RUM Pelky interfered with the

grievance process because he is indigent and Pelky refused to mail out his Step III grievance appeals as "legal mail". In plaintiff's words,

> It was RUM Pelky who refused to accept mail to be placed in the mail, therefore it RUM Pelky who interfered with Step III Grievance, therefore it was his job to accept it and mail it out which he refused to do so. MR. Cooper the 3rd witnessed and is willing to testify to this fact.

Plaintiff's Response/Rebuttal (PageID.103). Plaintiff further stated that, "RUM Pelky read the grievance and determined that it did not qualify as postage loans" and that "it was his job to ensure that it be mailed." *Id*.

Plaintiff's response/rebuttal is neither an affidavit nor a declaration; in fact, plaintiff did not even sign the response/rebuttal. *Id*.[1] Plaintiff's arguments set forth in his response/rebuttal do not create a genuine issue of material fact on whether RUM Pelky interfered with plaintiff's use of the grievance process. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). Even if plaintiff had presented these statements in a properly executed affidavit or declaration, these conclusory statements would not create a genuine issue of fact. "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (stating that the object of a summary judgment motion "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").[2] Based on this record, there

---

[1] The Court notes that the Clerk allowed plaintiff to file the unsigned and undated response because his signature appeared on a certificate of service which was mailed separately.

[2] The Court has considered *Perttu v. Richards*, 605 U.S. 460, 479 (2025), in which the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." Here, plaintiff's lawsuit involves a retaliation claim against defendant Pelky. Plaintiff suggests that Pelky's alleged interference with exhaustion was retaliatory and "intertwined" with the merits of his retaliation claim. However, *Perttu* does not apply here, because plaintiff did not identify a genuine issue of material fact related to exhaustion which a jury could decide at trial.

8

is no evidence that plaintiff properly exhausted a grievance against defendants Pelky and Cochrane. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment will be granted.

### III.    Doe defendant

As discussed, plaintiff's lawsuit includes an unidentified "Doe" defendant, *i.e.*, "Inspector John Doe". A "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), *R&R adopted*, 2016 WL 3251761 (E.D. Mich. June 14, 2016). As discussed, the Court will grant summary judgment in favor of the last two identified defendants, RUM Pelky and Officer Cochrane. There are no other parties remaining in the lawsuit. Accordingly, plaintiff's claims against the unserved, unidentified "Inspector John Doe" will be dismissed without prejudice.

### IV.    Conclusion

For the reasons set forth in this opinion,

**IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 21) is **GRANTED**, that plaintiff's claims against Inspector John Doe are **DISMISSED** without prejudice, and that judgment will be entered in favor of defendants.

Dated: September 11, 2025                        /s/ Ray Kent
                                                 RAY KENT
                                                 United States Magistrate Judge